CoPilot Travel, Inc. v Magstar Capital, LLC (2025 NY Slip Op 51388(U))

[*1]

CoPilot Travel, Inc. v Magstar Capital, LLC

2025 NY Slip Op 51388(U)

Decided on September 2, 2025

Supreme Court, New York County

Reed, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on September 2, 2025
Supreme Court, New York County

CoPilot Travel, Inc., Plaintiff,

against
Magstar Capital, LLC, DAVID MAGLI, Defendant.

Index No. 655644/2021

Robert R. Reed, J.

This action was commenced by the filing of a summons with notice on September 24, 2021 (NYSCEF doc. no. 001). A complaint was filed on December 15, 2021 (NYSCEF doc. no. 010). The complaint alleges that Magstar Capital LLC breached its contractual obligations to plaintiff, a Tennessee based travel startup company. It is asserted that Magli, by and through his company Magstar, failed to act as financial advisor and failed to raise funds and obtain potential investment opportunities in accordance Magstar's contractual obligations under an August 6, 2020 letter agreement.
As a result of early motion practice, the now-remaining substantive claims are for fraudulent inducement, breach of contract and tortious interference with a prospective business opportunity (NYSCEF doc. no. 34, pg. 44). CoPilot also seeks declaratory relief as to whether the agreement was properly terminated or rescinded (Complaint, NYSCEF doc. no. 10, para. 143).
In motion sequence 007, defendant Magstar seeks an order, pursuant to CPLR 2104, to enforce a purported settlement agreement reached by the parties via email.
Background
Magstar submits that a November 2024 conversation between Magstar's counsel and prior counsel for plaintiff created a binding settlement agreement. On Monday, November 11, 2024, plaintiff's prior counsel emailed counsel for Magstar the following:
Stephen — we've consulted with our client. We would be willing to enter into a settlement agreement wherein both sides discontinue their claims and exchange mutual releases. What are your thoughts? If amenable, we would prepare a short agreement for your review. Thanks much.
(NYSCEF doc. no. 77).
The same day, counsel for Magstar responded:
Chris: Magstar is amenable to such an agreement. Even though David Magli has already been dismissed from this case, he should be included among the releasees (and that can be mutual for Gary as well). Please send us a draft of the agreement and we will review.
Thanks,
Stephen
(id.).
The following day plaintiff's prior counsel emailed a draft settlement agreement and requested that counsel for Magstar review it (Affirmation, NYSCEF doc. no. 82, para. 15). Two days later, Magstar's counsel responded with revisions. Counsel stated the following:
Chris: Attached please find a revised draft of the agreement with our suggested revisions reflected in track changes (other than the new numbers for new paragraphs — I find that gets confusing and sometimes cumbersome when adding new paragraph numbers in track changes). I do not think these will be controversial. Please let me know if you have any comments or questions.
Stephen
(NYSCEF doc. no. 77). According to counsel for Magstar, the revised agreement did not alter or add any material terms to the settlement agreement (NYSCEF doc. no. 82, para. 16).
Thereafter, prior counsel of the plaintiff did not respond to the revised agreement, and then plaintiff retained new counsel (id. at pg. 5). Counsel for Magstar attempted to follow up with new counsel regarding the agreement, but new counsel did not respond. To date, plaintiff has refused to execute the stipulation of settlement and does not agree to resolve the matter in accordance with prior counsel's communications (id. at pg. 7).
Discussion
CPLR §2104 provides that an agreement between parties or their attorneys relating to any matter in an action is not binding upon a party unless it is in a writing subscribed by him or his attorney or reduced to the form of an order and entered.
An electronic-mail string can form the basis for a binding settlement in accordance with CPLR 2104, so long as there is consent in writing sufficient to meet the "subscribing" requirement, and the material terms are manifest (2024 commentary to CPLR 2104 citing, Rawald v Dormitory Authority, 199 AD3d 477 [1st Dept 2021]). An email is enforceable and "subscribed" in accordance with the statute, if the sender is identifiable, the message was sent intentionally, and the email contains all material terms of the agreement (Rawald at 477).
Magstar argues that the email correspondence with plaintiff's prior counsel formed a binding settlement agreement that must be enforced. According to Magstar, the emails were "writings" subscribed by the parties that included all material terms of the agreement (the parties agreed to discontinue their claims and exchange mutual releases), and no material terms were left subject to further negotiation. Plaintiff disagrees.
Plaintiff submits that the parties merely discussed the potential for a future agreement and exchanged settlement agreements, the terms of which had not been fully resolved. The parties purportedly did not agree whether the mutual dismissals would be with prejudice, and did not negotiate or agree to Magstar's revised settlement agreement, which included, inter alia, a [*2]newly proposed nondisparagement clause and a "no admission of wrongdoing" clause (NYSCEF doc. no. 85, pg. 7). Plaintiff argues that due to the lack of mutual assent on several terms of the settlement agreement, the record does not clearly support a claim that the parties reached a settlement agreement that is enforceable on its face (id. at 8). The court agrees.
It is this court's view that the settlement agreement entered between the parties is not enforceable. Stephen Milito, then-counsel for plaintiff, initiated communication and made a settlement offer in his November 11, 2024 correspondence when he stated: " we've consulted with our client. We would be willing to enter into a settlement agreement wherein both sides discontinue their claims and exchange mutual releases" (NYSCEF doc. no. 77, pg. 5). The message was identifiable and sent intentionally by plaintiff's then-counsel and contains the material terms of the settlement offer. Defendant Magstar, however, did not explicitly assent to the terms as proposed.
Defendant responded to counsel's email stating it was "amenable" to settlement. The word "amenable" is defined by the Cambridge Dictionary as "willing to accept or be influenced by a suggestion" (https://dictionary.cambridge.org/us/dictionary/english/amenable). Defendant, therefore, did not indicate a clear assent to the exchange of mutual releases. Rather, by the plain language and interpretation of its response, defendant indicated it was willing to accept the offer, which was made contingent upon receipt of a draft agreement for its review (NYSCEF doc. no. 77, pg. 5). Following receipt of an initial settlement draft, defendant submitted a counter proposed agreement that was not ultimately accepted by plaintiff.
The law is clear that agreements to agree are not enforceable (Argent Acquisitions, LLC v First Church of Religious Sci., 118 AD3d 441, 443 [1st Dept 2014] [a mere agreement to agree, in which a material term is left for future negotiations, is unenforceable]). An agreement which is expressly conditioned on the execution of a definitive agreement satisfactory in form and substance to both parties, does not give rise to an enforceable contract (DCR Mortg. VI Sub I, LLC v Peoples United Fin., Inc., 148 AD3d 986 [2d Dept 2017]).
Although Magstar submits that the proposed changes to plaintiff's initial release were not "uncontroversial," a review of the proposed changes reflects that Magstar made material changes to the second page of the settlement agreement and included five new paragraphs of text including language regarding "non disparagement," "admissions," "party status," and, among other things, a paragraph addressing "enforcement and attorney's fees." It is this court's view that the question of whether a party consents to limiting its communication and subjecting itself to penalty for "disparaging" communication, such as the payment of attorney's fees, are material terms of a settlement agreement that must be expressly consented to in order to be enforceable.
This court does not find that the material terms of the agreement were properly manifest as required for an email to be enforceable in accordance with the Appellate Division's conclusions in Rawald (199 AD3d 477 [1st Dept 2021]).
Accordingly, it is hereby
ORDERED that Magstar's motion to enforce the settlement agreement is denied.
DATE September 2, 2025
ROBERT R. REED, J.S.C.